ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

June 18, 2004

Ms. Shirley Neeley, Ed.D.
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701

Opinion No. GA-0204

Re: Whether a public school teacher may be awarded compensation under the statutory Advanced Placement Incentive Program (RQ-0151-GA)

Dear Commissioner Neeley:

Your predecessor asked whether a public school teacher may be awarded compensation under the statutory Advanced Placement Incentive Program if the compensation is in addition to that received under the teacher's employment contract, or alternatively, as an express or implicit term of the teacher's contract.[1] *See* TEX. EDUC. CODE ANN. §§ 28.051-.058 (Vernon 1996 & Supp. 2004) (creating the Texas Advanced Placement Incentive Program ("APIP")).

The stated purpose of APIP "is to recognize and reward those students, teachers, and schools that demonstrate success in achieving the state's educational goals," by establishing and maintaining successful college advanced placement courses and international baccalaureate courses. *Id.* § 28.052(a) (Vernon 1996). Funding for APIP comes from grants, donations, and legislative appropriations, which are distributed by the Texas Education Agency. *Id.* § 28.057(a). Among other incentives, a participating school may receive $100 for each student who receives a certain score on a college advanced placement test or an international baccalaureate examination, $50 of which may be placed in a school's teacher bonus pool. *Id.* § 28.053(a)(2), (f) (Vernon Supp. 2004). When a school receives an award, the school principal is to convene a team of teachers and others to determine how to spend the funds. *Id.* § 28.053(c). Priority is to be given "to academic enhancement purposes in using an award received under the program." *Id.* § 28.055(a) (Vernon 1996). The team may decide, among other things, "to direct [the] expenditure of funds . . . for awards to individual teachers participating in the program." *Id.* § 28.053(c) (Vernon Supp. 2004).

A school must apply to the State Board of Education to participate in the program. *Id.* § 28.055(b) (Vernon 1996). A teacher must also apply to the board and teach a college advanced placement course or an international baccalaureate course to participate in the program and be

---

[1]*See* Letter from Mr. Robert Scott, Chief Deputy Commissioner, Texas Education Agency, to Honorable Greg Abbott, Texas Attorney General (Dec. 17, 2003) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

eligible for an award. *Id.* §§ 28.053(e), 28.056 (Vernon 1996 & Supp. 2004). An eligible teacher may receive (1) subsidized training, (2) a one-time bonus for teaching a college advanced placement course or an international baccalaureate course for the first time, or (3) a share of the teacher bonus pool distributed in shares proportional to the number of courses taught. *Id.* § 28.053(d)(1)-(3) (Vernon Supp. 2004).

As the Request Letter notes, teacher contracts typically run for a term at least through the school year, but rarely specify an entitlement to a particular teaching assignment. *See* Request Letter, *supra* note 1, at 2. The Request Letter asks:

1. May a teacher be paid any additional amounts as determined by the campus team in its discretion under Section 28.053, if those amounts are in addition to the compensation for which the teacher has contracted?

2. May a district pay an amount to a teacher in addition to the compensation for which the teacher has contracted using the statutory methodology in Subsection 28.053(d), by virtue of the employment contract implicitly incorporating that provision?

3. May a district prospectively incorporate into its employment contract the receipt of additional compensation, contingent upon an award by the campus team?

*Id.*

The Request Letter specifically asks whether such payments would offend article III, section 52 of the Texas Constitution. That section and other constitutional provisions such as article III, sections 44, 51, and 53 prohibit the state and its political subdivisions from gratuitously paying public funds for private purposes. *Byrd v. City of Dallas*, 6 S.W.2d 738, 740-41 (Tex. 1928). Sections 51 and 52 require that public funds be expended to achieve a public purpose. *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002); *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). The Supreme Court of Texas has adopted a three-part test to determine whether a payment accomplishes a legitimate public purpose under section 52: "Specifically, the Legislature must: (1) ensure that the statute's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit." *Tex. Mun. League*, 74 S.W.3d at 384. Here, APIP's stated purpose is to reward successful achievement of the state's education goals. Tex. Educ. Code Ann. § 28.052(a) (Vernon 1996). The statutes limit payment from the Teacher Bonus Pool to teachers who have qualified and teach APIP courses. *Id.* §§ 28.053, 28.056 (Vernon 1996 & Supp. 2004). APIP payments to teachers satisfies the requirements of article III, sections 51 and 52.[2]

---

[2]We do not address the expenditure of APIP funds for other purposes.

More pertinent to the questions here, article III, sections 44 and 53 limit the authority of the legislature, counties, and municipal authorities to pay extra compensation to public employees. Under article III, section 44, the legislature "shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law." TEX. CONST. art. III, § 44. Article III, section 53 denies the legislature the "power to grant, or to authorize a county or municipal authority to grant, any extra compensation, fee or allowance to a public officer, agent, servant or contractor, after service has been rendered, or a contract has been entered into, and performed in whole or in part." TEX. CONST. art. III, § 53; *see also Harlingen Indep. Sch. Dist. v. C.H. Page & Bros.*, 48 S.W.2d 983, 986 (Tex. Comm'n App. 1932, judgm't adopted) (determining that school district is a "municipality" subject to article III, section 53).

As this office frequently has noted, a key constitutional concern is that public compensation may not be increased retroactively. *See, e.g.*, Att'y Gen. Op. Nos. JC-0376 (2001) (one-time salary supplement that retroactively increases compensation would not be constitutional), JM-1253 (1990) (prosecutor may not award bonus from drug seizure funds in addition to contractual compensation), JM-1113 (1989) (merit pay raises may be given prospectively but not retroactively), WW-790 (1960) (longevity award may be paid as compensation to retain valuable employees but may not be paid to former employees). More specifically, the state and its political subdivisions may not pay additional funds for contractual performance already required by an existing contract. *Rhoads Drilling Co. v. Allred*, 70 S.W.2d 576, 581 (Tex. 1934). The state and its political subdivisions may modify their contracts, but may not agree to make additional payments without receiving new consideration in return. *Id.* In Attorney General Opinion MW-68, the question was whether article III, section 53 prohibited a school district from giving bonuses or salary increases after the school year had begun to teachers who rendered their services under term contracts. Tex. Att'y Gen. Op. No. MW-68 (1979). This office determined that, "in the absence of additional consideration, the school district may not increase a teacher's annual compensation under the contract once part performance has been rendered. The school board may, however, renegotiate a contract already performed in part where new consideration passes to the district in exchange for new benefits provided." *Id.* at 2. For example, a teacher's agreement to receive APIP training and teach APIP courses would constitute new consideration if such terms of performance are not already required by existing contract or school district policy. Of course, we cannot determine what would constitute new consideration without reference to a particular teacher's contract and circumstances.

The remaining questions are whether APIP payments may be incorporated into new contracts, either expressly or implicitly. This office has previously determined that compensation may be increased after services have been rendered provided the employee's contract or applicable state law at the time of the contract "provided for the possibility of additional payments." Tex. Att'y Gen. Op. No. JC-0383 (2001) at 2. Laws existing at the time and place a contract is signed are incorporated into the contract. Request Letter, *supra* note 1, at 2; *Cent. Educ. Agency v. George West Indep. Sch. Dist.*, 783 S.W.2d 200, 201 (Tex. 1989); *see also* Tex. Att'y Gen Op. No. JC-0115 (1999) (school board policy to award back pay for period of suspension may be viewed as a term of the contract and,

applied prospectively, is not prohibited by article III, section 53 of the constitution). Section 28.053 of the Education Code expressly provides that teachers who fulfill certain requirements are eligible to receive APIP payments. Consequently, contracts executed after June 20, 2003, the effective date of the statute, would incorporate that statute's terms as part of the teacher's contract for compensation. Moreover, a teacher whose contract expressly provides for the prospective possibility of such additional compensation could receive APIP payments without violating sections 44 and 53 of the constitution.

### S U M M A R Y

An Advanced Placement Incentive Program payment to a public school teacher under section 521.126 of the Education Code serves a public purpose. A public school teacher under an existing contract may not be awarded such a payment unless (1) the teacher provides additional consideration in return, or (2) the teacher's contract expressly provides for the possibility of such additional compensation. A teacher may receive such a payment as part of compensation in contracts executed after June 20, 2003, the effective date of the statute.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee